IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

|  |  |
|---|---|
| **AFFIDAVIT IN SUPPORT OF APPLICATION FOR CRIMINAL COMPLAINT** | ) Case No. 4:17-MJ-00500 ) ) ) ) ) ) ) [FILED UNDER SEAL] |

I, Mike Stueckrath being first duly sworn, do herby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a detective with the Des Moines Police Department (DMPD) and have been so employed for 31 years. Since 2016, I have been assigned as a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI).

2. From 1985 to 1990, I was assigned to the DMPD's Uniform Patrol Division as a patrol officer. From 1990 to 1992, I was assigned to the DMPD's Gang Unit. While assigned to the Gang Unit, I investigated street level narcotics trafficking and criminal gang activity. During this period, I executed and served as the affiant for gang-related search warrants and investigated gang members from across the country who were involved in criminal activity. Many of these investigations led to state and federal prosecutions of individuals engaged in criminal street gang activity.

3. From 1992 to 1996, I was assigned to the DMPD's Narcotics Unit. While assigned to the Narcotics Unit, I investigated the transportation of controlled substances through mass transit systems (airplanes, buses, courier services) as well as street-level drug activity occurring at local hotels and motels in the Des Moines metro area.

1

4.      From 1996 to 1997, I was assigned to the DMPD's Crimes Against Persons Section, where I investigated crimes of violence to include robberies, homicides, and assaults. From 1997 to 1998, I was assigned to the DMPD's Crimes Against Property Section, where I investigated property crime to include burglaries and thefts.

5.      Since 1998, I have been assigned to the DMPD's Intelligence Unit where I investigate predominately criminal street gang activity and firearm-related crimes.

6.      I have testified as an expert witness in state and federal court and have served as an instructor and/or attended seminars/conferences throughout the United States on criminal gang investigations. In 1997, the United States Department of Justice honored me for my work in criminal street gang and narcotics-related investigations. I have lectured to various law enforcement and civic groups on the intersection of criminal street gang activity and violence. I am the former Vice President for the Iowa Chapter of the Midwest Gang Investigators Association (MGIA) and have been a member of MGIA since its inception.

7.      I have investigated the trafficking of firearms, crimes of violence, and criminal organizations. I have used (among other law enforcement techniques) cooperating informants, undercover agents, pen register/trap and trace devices, video surveillance, GPS tracking devices, and audio surveillance throughout the course of my law enforcement career. Additionally, I have conducted numerous controlled purchases (meaning under the direction and supervision of law enforcement) of firearms and narcotics from investigated individuals. Based on my training and experience, I am familiar with methods used in firearm trafficking, narcotics trafficking, and the

2

laundering of illegal proceeds. Based on my training and experience, I am familiar with the manner in which individuals will illegally obtain, transport, possess, transfer, and sell firearms.

8. Since January 2016, I have been investigating numerous armed "Take Over Style" bank robberies in the Des Moines Metro area that lead to state and federal convictions. I am familiar with the manner and use of the "Bait Money" (GPS Real-Time Tracking) that is utilized by various financial institutions when a robbery occurs. This "Bait Money" tracks the money as it leaves the financial institution to track the suspects while in possession of said money.

9. Based on the facts set forth in this Affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 922(g)(1) and 924(a) have been committed by Daryl Allen SIMMONS.

## **PROBABLE CAUSE**

10. On October 12, 2017, at approximately 2:21 p.m., Des Moines Police Officer C. Quinn responded to the Fairfield Inn & Suites located at 6880 Fleur Drive, Des Moines, Iowa on suspicious activities from occupants in room 233, one of which was later determined to be Daryl SIMMONS. Officer Quinn spoke to the hotel manager, who had called law enforcement. The hotel manager stated that the overnight staff reported that SIMMONS and a female were outside their room all night, walking the hallways and appearing to be on drugs. At one point, the night auditor reported that a person, later identified as SIMMONS, came down to the front desk and bought may items from the hotel market at 1:00 AM on October 12, 2017. The night auditor stated he got a "contact high" from breathing in the odor from SIMMONS. Furthermore, the night auditor spoke to a female who was with SIMMONS who said her name was "Molly".

11. On October 12, 2017, at approximately 6:00 a.m., "Molly" made a large amount of food to include waffles and bagels in the breakfast area. Hotel staff were unsure if "Molly"

3

was a registered guest at the hotel. The hotel breakfast attendant noticed that "Molly" was placing food in her purse. The breakfast attendant then asked her if she was a registered guest at the hotel. "Molly" refused to give her room number and stated she was with the guy in room #233. "Molly" then got upset at the hotel staff and threw away all of the food that she had prepared in the breakfast area, which filled a waste basket. "Molly" then contacted the male occupant in room #233. The male occupant came down to the front desk and told the night auditor that his name was Daryl SIMMONS. SIMMONS stated that ROOM #233 was registered under Amy Porter. SIMMONS told the night auditor that Amy Porter was his sister.

12. The breakfast attendant then contacted the hotel manager via telephone and reported SIMMONS and "Molly's" disruptive behavior. The hotel manager advised the breakfast attendant to get a photograph of their license plate as they left the hotel, if the breakfast attendant felt comfortable to do so. The breakfast attendant observed SIMMONS and "Molly" walking to a black SUV. The breakfast attendant went outside and photographed the license plate of the black SUV. "Molly" told the breakfast attendant that she was stalking "Molly" and the breakfast attendant responded she was just taking picture of license plates for her boss. "Molly" stated "Why don't you just cook bacon!" "Molly" told SIMMONS that the breakfast attendant would probably call the cops. SIMMONS told the breakfast attendant that the vehicle he was driving was registered to an employee. The license plate was FLR340, Iowa Plates. SIMMONS and "Molly" left the hotel at approximately 7:00 AM.

13. After the phone call from the staff, the manager arrived at the hotel, reviewed information from room #233, and found that Faith Barnes, who is an Altoona, Iowa, Fairfield Inn employee, had utilized her employee ID discount and booked a room for three nights under the

4

name of Amy Porter. At the time of the reservation, Amy Porter provided an address 1234 123th Street, Des Moines, Iowa.

14. The manager felt the observations made by her staff were highly suspicious and decided to enter Room #233. The manager waited for a maintenance person to arrive and then entered room #233. Inside, the manager found what she referred to as a "bump stock", a rifle scope, assorted knives, watches and masks. The manager observed that the blinds were twisted out of the way so there was clear access to the window, and that the window was open. Because of the recent events in Las Vegas, the manager and the hotel staff was very concerned with the contents of the room. The manager took photographs of the room on her cell phone and exited the room.

15. The manager then called the Des Moines Police Departnment to report the incident. Officer Quinn responded. After speaking with the manager and viewing the photographs on the manager's phone, Officer Quinn called Your Affiant to obtain background checks to include Iowa License Plate FLR340. While waiting for Your Affiant's response, Officer Quinn observed a Black Lincoln Navigator with Iowa License Plate FLR340 pull into the Fairfield Inn. The vehicle proceeded to the north side of the parking lot and parked. The rear windshield of the vehicle was missing.

16. Thereafter, Officer Quinn, while in a marked DMPD patrol vehicle, pulled behind the Navigator and activated his emergency lights. Officer Quinn made contact with the driver, who identified himself as Blair Neil Simmons, DOB 02-02-1980. The female passenger presented an ID with the name Jessica Lucille Masters DOB 07-28-1992, address 220 Dickman, Apartment #345, Des Moines, Iowa, telephone number (515)-322-0700. Officer Quinn -

determined the driver was lying, that his name was actually Daryl SIMMONS, and that he had provided his brother's name. At that point, Officer Quinn took SIMMONS into custody.

17. SIMMONS told Officer Quinn he needed to talk to someone about the information he knew. Officer Quinn told SIMMONS that he needed to know what SIMMONS knew so that Officer Quinn could contact the appropriate type of detective. SIMMONS stated that he had gun and drugs in the vehicle. SIMMONS further stated he had a fully automatic rifle in the back seat behind the driver's seat loaded. SIMMONS told Officer Quinn that SIMMONS made a last minute decision to not have a shootout with him. SIMMONS said he was going to die today.

18. Officer Quinn conducted an impound search of SIMMONS vehicle. Officer Quinn located a Mossberg Model 715T .22 caliber rifle Serial Number ELE3390897 with 24 live rounds in the magazine. This rifle was located in the bottom of a duffle bag behind the driver's seat. Also located in the vehicle was a box that contained marijuana, methamphetamines and drug paraphernalia.

19. While SIMMONS was in the back of the Officer Quinn's patrol vehicle, Simmons dislocated his shoulder and slipped his hands to the front. SIMMONS had a handcuff key hidden in his mouth. SIMMONS spit the handcuff key out and told Officer Quinn to take it.

20. In 2002, SIMMONS was convicted of Conspiracy To Distribute Methamphetamine in U.S. District Court for the Southern District of Iowa.

21. Special Agent Charles Mulherin with the Bureau of Alcohol, Tobacco, and Firearms examined the firearm, determined that it was a functioning firearm, and stated that it was manufactured outside of the state of Iowa.

4:17-MJ-00500

## CONCLUSION

22. Based on the facts set forth in this affidavit, it is Your Affiant's belief that probable cause exists that SIMMONS was a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a). Your affiant therefore respectfully requests that an arrest warrant be issued for SIMMONS.

I further state and declare that all of the statements and information contained herein are true and correct to the best of my knowledge, information and belief.

Mike Stueckrath, Task Force Officer
Federal Bureau of Investigation

via video teleconference
Subscribed and sworn to before me this day of October, 2017.

Stephen B. Jackson, Magistrate Judge
United States District Court
Southern District of Iowa